James H. Walker and Henry L. Hertz, Coroner,

v.

Milroy H. Gibson et al.

*Insolvency—Replevin—Receiver—Practice.*

A court of chancery, upon the dismissal of a bill, finding itself, as the result of orders by it made, in possession of a fund to which claim has been made, but to which no one appears or has been shown to be entitled, should, before distributing the same, give opportunity and require all claimants to establish their title to such fund.

[Opinion filed November 11, 1890.]

IN ERROR to the Circuit Court of Cook County; the Hon. O. H. HORTON, Judge, presiding.

Messrs. TRUMBULL, WILLITS, ROBBINS & TRUMBULL, for plaintiffs in error.

Messrs. PACKARD & HULL and GEORGE S. HOUSE, for defendants in error.

WATERMAN, J. In this case it appears that judgments having been entered against Milroy H. Gibson and one McCormick, the sheriff took possession of their goods under executions issued upon said judgments; whereupon the plaintiff Walker sued out a writ of replevin to recover a portion of such goods, he claiming to be the owner of the same; Gibson then filed a bill setting up these proceedings and other facts, and asked for the appointment of a receiver to take possession of the goods. McCormick, the sheriff, the coroner, and the judgment creditors were named as defendants in said bill.

This bill was filed June 27, 1889, Walker not being made a party thereto.

On the 27th of June, 1889, in accordance with the prayer of the bill, a receiver was appointed. On the 5th of July, 1889, McCormick filed a cross-bill making Walker a party defendant. July 11, 1889, Walker, and Hertz, the coroner, filed a demurrer to the original bill and to the cross-bill of McCormick. July 24th Walker moved to set aside the order appointing the receiver, which motion was denied. He also filed an intervening petition, setting up his claim to a portion of the goods, and asking that he be permitted to proceed with his suit of replevin, and that the coroner be permitted to execute the writ therein issued. July 24th the receiver was ordered to sell the goods. July 26th Walker, and Hertz, the coroner, appealed from the order appointing a receiver, and also moved to stay the order for a sale of the goods, which motion was denied, and there was a refusal by the court to

allow an appeal from the order of sale. December 5th there was filed in said cause an order of the Appellate Court setting aside the order appointing a receiver. February 3, 1890, Walker asked leave to withdraw his intervening petition. February 17th Gibson filed a supplemental bill, setting forth, *inter alia*, that pending the appeal from the order appointing a receiver, the receiver had sold the goods taken by him for $5,262.23. March 8th an order was entered denying motion of Walker and Hertz to discharge the receiver and turn over property; also that the demurrer of Walker and Hertz filed July 11, 1889, stand as to Hertz, and that Walker have leave to file a separate demurrer of that day, which demurrer was therefore filed; leave was also given to Walker and Hertz to file demurrers to the supplemental and cross-bills, and on motion leave was given Walker to withdraw his intervening petition. Thereupon the court sustained all the demurrers of Walker and Hertz, and the complainants in all the bills elected to stand by their bills.

The receiver's report shows a sale of all the goods for $5,262.23, from which he asks to have allowed $926.60 for expenses, $400 for receiver's and $25 for master's fees, leaving, according to the receiver's report, $3,760.63 for distribution.

March 8, 1890, Walker and Hertz asked the court to order the receiver to deliver either to Walker or Hertz the proceeds of the goods sold by him covered by the replevin writ. July 31, 1890, the court dismissed all the bills as to Walker and Hertz, and by consent of all other parties, entered a decree dividing the net proceeds of the goods *pro rata* among the various judgment creditors. Walker and Hertz prayed an appeal, which was denied, and they have sued out a writ of error.

This record presents the anomalous situation that Walker, being restrained by the appointment of a receiver from prosecuting his writ of replevin, the goods claimed by him are sold, with others, by the receiver, and turned into money, so that there is nothing left for his replevin writ to act on; that thereafter the court appointing the receiver, finds and

decrees that, as regards Walker and the coroner, who holds the replevin writs, the bill under which the receiver was appointed shows no equity, and consequently that they ought not to have been restrained from the execution of the replevin writ or the prosecution of that suit.

Yet by the final decree entered in that cause, the proceeds of the goods claimed by Walker are divided among persons against whom he claimed the goods, and against whom, in effect, his suit was directed; so that Walker, who by the decree of the court, was found to be in the right in this chancery litigation, loses the subject-matter of it, and the complainants, who are held to be in the wrong, succeed and accomplish what they undertook in filing their bills; in other words, the complainants, whom the court finds have abused the forms of chancery, and improperly restrained Walker from exercising his plain, legal right, accomplished all that they undertook by their unwarranted course, and obtain against Walker that to which the court has declared, that as against him, they had no right. This seems to have been done because of the action of Walker himself. Walker voluntarily withdrew his intervening petition; that being done, so soon as the court dismissed the bill as to him, he was out of court, and, without some further action upon his part, the court was powerless to afford him affirmative relief. Edwards et al. v. Helm, 4 Scam. 142.

The situation then presented was anomalous, and the question now before this court is, what then ought to have been done? Walker having been improperly prevented from prosecuting his suit until its further prosecution would be futile, he was entitled to insist that he be allowed to show to the court, in whose custody the proceeds of the goods he claimed then were, that his action of replevin was, when brought, maintainable, and that in it, and under the law as applicable to it, he would have been successful; and that he was also not only entitled to the possession, but to the proceeds of the goods; in other words, Walker was entitled to prosecute his claim to the proceeds of the goods the same as he would have been to the goods themselves had they not

been sold; and if the court found him to be the owner of the goods, then the proceeds arising from their sale should have been awarded to him.    Ought the court, in the absence of any petition by him asking for such relief, to have distributed the proceeds among others?    We think not.

The only thing up to the final decree that had been accomplished by the chancery litigation, was to deprive Walker of an opportunity to maintain in his replevin suit his claim to the goods; in effect, to take them out of his hands, and, by order of court, turn them into money; nobody, as against Walker, had shown any title whatever to the goods he claimed; why, then, should the court award the proceeds of these goods to persons who, as against the party from whom, in effect, they were taken, had shown no title?

The court, in sustaining the demurrers, decided that up to that time there had been no reason for applying to a court of equity; the bill being dismissed as to Walker and Hertz, there then was something concerning which a court of equity could alone determine; there was a fund in its keeping to which no person had established a title, and it might properly have required all persons claiming the same to assert and maintain before it such claim.    The case is no different from what it would have been had Walker not filed his intervening petition, and the complainants had voluntarily dismissed their bills; the court would have then, as it did upon the dismissal of the bills by its own order, found itself in possession of a fund which had been created by virtue of orders of court, and to which no one had established a claim.

It is urged that Walker refused to submit to the court his claim to the fund.    The record fails to show any such refusal; he asked to have the fund paid over to him, but the court was in no position to do this; he had made a claim to a large portion of the goods; had been prevented from prosecuting it, but by proof he had established nothing.

It is quite likely that Walker dismissed his petition because, as it asked to have the goods delivered to him, when the goods no longer existed, such a petition was vain; however this may be, he had still a right to claim the proceeds, and the

court finding in its hands a fund derived by its action from goods claimed by Walker, should have required him to file a petition for the proceeds, and upon that proceeded to determine to whom the fund in its custody should be distributed; if Walker, upon rule served upon him to file such petition, failed so to do, the court might then have given the proceeds to other parties.

The proper practice is indicated in High on Receivers, Sec. 437, which says: "Where they are prior creditors, parties to the cause, having claims upon an estate which is put into the hands of a receiver, although the plaintiff, on whose application the receiver was appointed, subsequently dismisses his bill and consents to the receiver's discharge, the court will yet protect the prior creditors by continuing the receiver; and it may require them to file a bill forthwith, as a condition of thus affording them protection." Munough v. French, 2 Molloy, 497; Field et al. v. Jones et al., 11 Geo. 413; Logan v. Bowen et al., 1 Schoales & Lefroy, 296; Whiteside v. Prendergast, 2 Barb. Ch. Repts. 471.

*Reversed and remanded.*